IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CYBRARY, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 22-500-CFC |
| LEARNINGWISE EDUCATION INC. d/b/a UNIVERSITY CANADA WEST, | |
| Defendant. | |

## MEMORANDUM ORDER

Plaintiff Cybrary, Inc. (Cybrary) filed this diversity action against Defendant Learningwise Education Inc. d/b/a University Canada West (UCW) for breach of contract. D.I. 1 ¶¶ 51–59. Before me is UCW's motion to dismiss Cybrary's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). D.I. 7.

I.   BACKGROUND

Because I am considering the merits of a Rule 12(b)(6) motion, the following facts and background information, except where noted otherwise, are taken from the Complaint and from documents relied upon in the Complaint and

are assumed to be true. *See Mgmt. Sci. Assocs. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 244 (D. Del. 2020).

## A. The Parties

Cybrary is a company that offers cybersecurity and IT training. D.I. 1 ¶ 11. Its online course offerings include "cloud security, offensive and defensive security, risk-management compliance, scripting, coding, and cybersecurity management." D.I. 1 ¶ 11. Cybrary categorizes its course offerings into two groups: (1) "Cybrary for Individuals" and (2) "Cybrary for Teams." D.I. 1 ¶ 15. "Cybrary for Individuals is aimed at training and certifying cybersecurity professionals," D.I. 1 ¶ 16; Cybrary for Teams "incorporates the course offerings in Cybrary for Individuals but adds a layer of administrative oversight that allows business leadership to accurately assess its cybersecurity readiness," D.I. 1 ¶ 17. Cybrary for Teams can be purchased in either "Essentials" or "Enterprise" packages. D.I. 1 ¶ 19.

Cybrary sells these course packages on a subscription basis. D.I. 1 ¶ 20. While Cybrary for Individuals has free and paid versions, both Cybrary for Teams offerings require paid subscriptions. D.I. 1 ¶ 20. A user can subscribe to Cybrary for Individuals and Cybrary for Teams "Essentials" directly through Cybrary's website, but a customer can subscribe to Cybrary for Teams "Enterprise" only by speaking with Cybrary's sales team. D.I. 1 ¶ 20.

"UCW is a private, for-profit university located in Vancouver, Canada." D.I. 1 ¶ 21. Its course offerings include three undergraduate degree programs and a Masters of Business Administration program. D.I. 1 ¶ 22.

### B. The Contract Dispute

In 2021, UCW and Cybrary began negotiating a potential UCW subscription to Cybrary's Cybrary for Teams Enterprise package. D.I. 1 ¶ 22. On August 11, 2021, Cybrary forwarded "Order Form 13502" (Order 13502) to UCW. D.I. 1 ¶ 22. Under Order 13502, Cybrary would purchase 3,000 Cybrary for Teams Enterprise licenses for three one-year terms. D.I. 8-1 at 2. Cybrary would pay $200 per license per year, for a total yearly payment of $600,000 and $1,800,000 over the three-year term. D.I. 8-1 at 2. Order 13502 also includes a number of terms and conditions (e.g., definitions, payment and order conditions, etc.). D.I. 8-1 at 4–16. The listed "pricing expiration date" is August 30, 2021; listed service start date is September 1, 2021; and listed service end date is August 31, 2024. D.I. 8-1 at 2–3.

UCW never signed or returned Order 13502. But, the parties signed a Licensing Agreement on August 30, 2021. D.I. 8-1, Ex. B. The parties amended the Licensing Agreement on September 16, 2021. D.I. 8-1 at 39. The amendment consisted primarily of slight changes to the Licensing Agreement's subscription term and payment schedule. D.I. 8-1 at 39.

UCW has not executed any additional purchase orders or paid Cybrary for any subscriptions. D.I. 1 ¶ 57. According to Cybrary's complaint, the Licensing Agreement and its amendment were signed by UCW's then-President, Brock Dykeman. D.I. 1 ¶¶ 34, 40. But, on September 22, 2021—after the Licensing Agreement and its amendment were both signed—Dykeman announced his retirement. D.I. 1 ¶ 41. UCW then appointed an interim president, Sheldon Levy. D.I. 1 ¶ 41. In November 2021, UCW told Cybrary that it "wished to terminate the Licensing Agreement." D.I. 1 ¶ 42. Cybrary considered this a unilateral breach, but UCW "disputed that it had any obligation under the contract." D.I. 1 ¶ 43. Still, on January 20, 2022, Cybrary sent UCW an invoice. D.I. 1 ¶ 44; D.I. 1-1, Ex. E. UCW responded that it would not pay the invoice because there was no contract. D.I. 1-1, Ex. F. This suit followed.

## II. SUBJECT MATTER JURISDICTION

Cybrary is incorporated in Delaware, and its principal place of business is in Maryland. D.I. 1 ¶ 4. UCW is incorporated in Canada, and its principal place of business is in Vancouver, British Columbia, Canada. D.I. 1 ¶ 5. In this state law breach of contract action, Cybrary seeks damages for UCW's breach of the Licensing Agreement. D.I. 1 at 12. Cybrary alleges that the Licensing Agreement incorporates Order 13502, so it requires UCW purchase 3,000 licenses at $200 per license per year, for a total yearly payment of $600,000 and $1,800,000 over three

years. D.I. 8-1 at 2. Thus, because complete diversity exists and the amount-in-controversy exceeds $75,000, this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

### III.  LEGAL STANDARD

A district court "may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (internal quotation marks and citation omitted). To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

In addition to the allegations contained in the complaint, courts also consider "exhibits attached to the complaint" when deciding a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.  DISCUSSION

"In order to survive a motion to dismiss for failure to state a breach of contract claim, a plaintiff must establish (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff." *Micro Focus (US), Inc. v. Insurance Servs. Office, Inc.*, 125 F. Supp. 3d 497, 500 (D. Del. 2015) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

Because this is a diversity case involving state law, I must apply Delaware contract interpretation law. "Delaware adheres to an objective theory of contracts, meaning that a contract's construction should be that which would be understood by an objective, reasonable third party." *Cox Commc'ns., Inc. v. T-Moible US, Inc.*, 273 A.3d 752, 760 (Del. 2022) (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)) (internal quotation marks omitted). "This approach places great weight on the [contract's] plain terms," and courts "interpret clear and

6

unambiguous terms according to their ordinary meaning." *Id.* (internal quotation marks and citations omitted).

"Ambiguity is present only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* (internal quotation marks and citation omitted). But "the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions." *VLIW*, 840 A.2d at 615. Rather, "[d]ismissal, pursuant to Rule 12(b)(6), is proper only if the defendant['s] interpretation is the *only* reasonable construction as a matter of law." *Id.* (emphasis in original).

The parties dispute whether the Licensing Agreement incorporates Order 13502. Cybrary argues that the Order is incorporated into the Licensing Agreement, thus creating an enforceable contract that UCW has now breached. D.I. 1 ¶¶ 29, 51–54. UCW claims the reverse—the Licensing Agreement requires a signed and returned purchase order to create an enforceable contract, and because UCW never signed and returned Order 13502—or any other order—there is no contract. D.I. 8 at 6–7.

Paragraph 2.1 of the Licensing Agreement sets out the ordinary licensing scheme between the two entities:

> CUSTOMER may purchase (a) a license to the Platform and Products, (b) Technical Support Services and/or (c) the SaaS Service, **in each case, by submitting a written and signed purchase order** (which term, for

7

> purposes of this Agreement, shall be deemed to include order forms prescribed by CYBRARY, if any) (each, an "Order") for written acceptance by CYBRARY. Each Order shall specify the Platform Services ordered, the items and license terms of Platform and/or the Technical Support Services being ordered and, in each case, the applicable pricing. **Upon acceptance of the Order by CYBRARY** and the acceptance by CUSTOMER of this Agreement, the license of the Platform, the access to the Platform Services and the provision of Technical Support Services shall be governed by the terms of this Agreement. Fees payable for the Platform Services, the Technical Support Services and licenses shall be as set forth in accepted Order issued under this Agreement. Any preprinted provisions of CUSTOMER's purchase orders or other terms not expressly included in this Agreement or an Order shall not apply, and as between CYBRARY and CUSTOMER the terms set forth in this Agreement shall be applicable and control. Each Order shall be governed by and incorporated into this Agreement, and any reference to this Agreement shall be [sic] default include all applicable Orders. In the case of conflict between an Order and this Agreement, the terms of this Agreement shall govern unless the Order terms explicitly indicate an intent to override any conflicting provisions in this Agreement. CYBRARY reserves the right to change its prices and related terms and conditions at any time without notice, provided that any such changes shall not affect Orders already accepted. All Platform, Open Source Platform and Documentation shall be delivered via electronic download. No hard copies shall be provided. All Products and the Platform Services shall be deemed accepted by CUSTOMER upon the earlier of delivery or when made available.

D.I. 8-1 at 21 (emphasis added).[1]

---

[1] In this Licensing Agreement, "CUSTOMER" refers to UCW. *See* D.I. 8-1 at 19.

8

Read in isolation, Paragraph 2.1 suggests that a condition precedent to any enforceable contract is the submission and acceptance of a written and signed purchase order. And Order 13502, while written, was never signed by either party. A reasonable interpretation of Paragraph 2.1 thus suggests that Order 13502 is not yet enforceable because it was not signed and submitted.

But when interpreting a contract, I must "read [the] contract as a whole and . . . give each provision and term effect . . . ." *Osborn*, 991 A.2d at 1159 (citation omitted). Also, "a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless." *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) (citation omitted).

Reading the Licensing Agreement as a whole suggests a second reasonable interpretation: Order 13502 was incorporated into the Agreement. First, Paragraph 2.2 of the Licensing Agreement states that "[t]his agreement will follow the terms and conditions established in the Order number 13502 issued by CYBRARY." D.I. 8-1 at 21. Second, the Licensing Agreement's integration clause states that "[t]his Agreement and its Exhibits, *including all Orders*, and any separate CYBRARY agreement referenced elsewhere in this Agreement constitute the entire understanding between the parties . . . ."). D.I. 8-1 at 32 (emphasis added).

9

Beyond express incorporation, other provisions in the Licensing Agreement align with many of the terms found in Order 13502:

| Provision in Licensing Agreement | Similar Provision in Order 13502 |
|---|---|
| Paragraph 1.8 states that "'Subscription Term', shall have the meaning given such term in an Order Form, which in this case, will be **August 31st, 2024**." D.I. 8-1 at 20 (emphasis added). | Order 13502's listed service end date is also **August 31, 2024**. D.I. 8-1 at 3 (emphasis added). |
| Paragraph 3.2 outlines a payment schedule for a Cybrary for Teams subscription: for the first year of investment, the price is **$200** per license, with a quantity of **3,000 licenses** ordered. D.I. 8-1 at 22 (emphasis added). | In Order 13502, the first year investment order also lists an order for **3,000 licenses** at a price of **$200** per license. D.I. 8-1 at 2 (emphasis added). |
| Paragraph 3.3 sets out a quarterly payment schedule for the first year, with payment due on **October** 12, 2021; **January** 10, 2022; **April** 11, 2022; and **July** 11, 2022. D.I. 8-1 at 22 (emphasis added) | Order 13502's "Additional Terms" section states that "[f]or the first year, payment due dates" will be in **October** 2021, **January** 2022, **April** 2022, and **July** 2022. D.I. 8-1 at 3 (emphasis added). |

These references would be "meaningless" if Order 13502 is not incorporated into the Licensing Agreement. *Sonitrol*, 607 A.2d at 1183. There would be no need to state in Paragraph 1.8 that the subscription term was August 31, 2024 because there would be no subscription. Paragraph 3.2 similarly would not need to outline a price of $200 per license and a quantity of 3,000 licenses, nor would Paragraph 3.3 need to outline a payment schedule.

The amendment to the Licensing Agreement does not undermine this interpretation; rather, it confirms it. The amendment makes two primary changes:

10

First, it changes the "Subscription Term" definition "in this case" to "January 10, 2025." D.I. 8-1 at 39. Second, the payment due dates are delayed to January 17, April 18, July 19, and October 17, 2022. At first glance, these new dates are now at odds with the original dates in Order 13502. D.I. 8-1 at 3. But the amendment elaborates that the subscription term was changed "in support of the agreed-upon 3-year partnership between the Parties." D.I. 8-1 at 39. This matches the three years of subscriptions outlined in Order 13502. D.I. 8-1 at 2. And except for the enumerated changes, the Licensing "Agreement is unaffected and shall continue in full force and effect in accordance with its terms and conditions." D.I. 8-1 at 39. Thus, these amendments reinforce an anticipated three years of licensing; the payment schedule has simply been pushed back one month. Indeed, if Order 13502 was not incorporated into the Licensing Agreement, then there would be no need to amend the payment due dates because with no placed order, no payment would be due. The amendment makes sense—and is not meaningless or illusory—only if Order 13502 is an enforceable contract.

Paragraph 2.1 fits within this scheme because it reasonably applies to subsequent contracts. After all, UCW is a university, and its student enrollment numbers may fluctuate from year-to-year. Under Paragraph 2.1, if subsequent licenses are necessary, then the parties do not have to redraft the Licensing Agreement; they can simply sign, submit, and execute another purchase order.

11

This interpretation need not be correct to defeat a motion to dismiss. Rather, it need only be reasonable, because I "cannot choose between two differing reasonable interpretations of ambiguous provisions." *VLIW*, 840 A.2d at 615. Because there are two reasonable interpretations of the Licensing Agreement—one that incorporates Order 13502, and one that does not—I will deny Cybrary's motion to dismiss.

\* \* \* \*

NOW THEREFORE, at Wilmington this Sixth day of February in 2023, **IT IS HEREBY ORDERED** that Learningwise Education Inc. d/b/a University Canada West's Motion to Dismiss is **DENIED**.

_____
CHIEF JUDGE